**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| The VILLAGE OF BROADVIEW, an Illinois Municipal Corporation, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| The U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director for U.S. Immigration and Customs Enforcement; and RUSSELL HOTT, in his official capacity as the Chicago Field Office Director for U.S. Immigration and Customs Enforcement, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**THE VILLAGE OF BROADVIEW'S VERIFIED**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

NOW COMES Plaintiff, the VILLAGE OF BROADVIEW, by and through its attorneys Michael T. Del Galdo, Michael A. Albert, Veronica Bonilla-Lopez, and Charles S. Huff of Del Galdo Law Group, LLC, and for its Verified Complaint for Declaratory and Injunctive Relief against Defendants U.S. DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security, TODD LYONS, in his official capacity as Acting Director for U.S. Immigration and Customs Enforcement, and RUSSELL HOTT, in his official capacity as Director of the Chicago Field Office for U.S. Immigration and Customs Enforcement, hereby states as follows:

**INTRODUCTION**

1.     This action arises out of the U.S. Department of Homeland Security's ("DHS") continuous illegal occupation of Village property via its over-night/early-morning construction of an eight-foot-tall metal fence placed on and spanning the entire width of Beach Street in the Village of Broadview, Illinois.

2.      For many months now, DHS, through its subsidiary agency, U.S. Immigration and Customs Enforcement ("ICE"), has engaged in an unprecedented and chaotic nationwide campaign to target, round up, detain, and deport any person suspected of unlawfully residing in the United States. As numerous reports confirm, in carrying out this extreme campaign, DHS and ICE officials have willfully, recklessly, and routinely trampled over the rights of individual citizens and local governments, leaving a trail of damage and confusion in their wake.[1]

3.      Most recently, the chaos and destruction sewn by DHS and ICE's heavy-handed and reckless enforcement tactics has fallen on Chicagoland's suburban communities via the commencement of "Operation Midway Blitz" in September of 2025.[2]

4.      Since the beginning of "Operation Midway Blitz," DHS officials claim to have made as many as 800 arrests in the Chicagoland area.[3]

5.      As a result of this spike in arrests, DHS and ICE's latest reign of terror has come to the Village of Broadview (the "Village") because the ICE Processing Facility for those arrested in "Operation Midway Blitz" is located in the Village.[4] This facility, which is federally owned and operated, is known as the "Broadview Processing Facility" (the "BPF").[5]

---

[1] Jessie Yeung, YoonJung Seo, *South Korean workers detained by ICE return home after saga that has rattled close US friendship*, CNN (Sept. 12, 2025), https://www.cnn.com/2025/09/12/asia/south-korea-workers-return-georgia-raid-intl-hnk.; Jamie Ding, 79-year-old US citizen injured in Los Angeles immigration raid files $50 million claim, AP (Sept. 26, 2025), https://apnews.com/article/immigration-raids-los-angeles-ice-lawsuit.

[2] Rebecca Santana, *ICE arrests nearly 550 in Chicago as part of 'Midway Blitz'*, AP (Sept. 19, 2025), https://apnews.com/article/trump-immigration-deportation-ice-chicago-arrests; Cate Cauguiran, Craig Wall, Tre Ward, and Lissette Nunez, *ICE Agents raid South Shore apartments; Trump says Chicago could become military training ground*, ABC (Oct. 1, 2025), https://abc7chicago.com/post/ice-chicago-federal-agents-surround-south-shore-apartment-building-dhs-requests-military-deployment-illinois.

[3] Press Release, U.S. Dept. of Homeland Security, *DHS Arrests More Than 800 Illegal Aliens Including Worst of the Worst Criminals in Operation Midway Blitz Despite Sanctuary Politicians and Violent Riots*, (Oct. 1, 2025), https://www.dhs.gov/news/2025/10/01/dhs-arrests-more-800-illegal-aliens-including-worst-criminals-operation.

[4] Michael Loria, 'You are Making War': Chicago suburb tells ICE they want them out, (Sept. 30, 2025), https://www.usatoday.com/story/news/nation/2025/09/30/ice-chaos-broadview-illinois-wants-them-out.

[5] Tina Sfondeles, Illinois Dems press Chicago ICE director for Broadview facility oversight, details on deportation operations, (Sept. 26, 2025), https://www.nprillinois.org/chicago-il/2025-09-23/illinois-democrats-want-answers-from-dhs-secretary-noem-about-ice-operations.

6.     The BPF is located at 1930 Beach Street, Broadview, Illinois. Beach Street is municipal property under the Village's exclusive jurisdiction. *See* **Ex. 1** (Broadview Acting Fire Chief Matthew J. Martin's letter to Director Hott dated Sept. 23, 2025, is attached as **Exhibit 1**).

7.     On or around September 23, 2025, DHS and ICE, without obtaining a permit and without giving the Village any warning or notice, illegally constructed an over eight-foot-high metal fence on and across Beach Street. *See* **Exs. 1-2** (Photos of the fence taken by Broadview Acting Fire Chief Matthew J. Martin on Sept. 23, 2025, are attached as **Exhibit 2**).

8.     This metal fence runs across the entirety of Beach Street, blocking access to any property that happens to be located on the south side of this fence, which includes industrial buildings housed by private businesses. *See* **Exs. 1-2**.

9.     This fence also operates with a manually operated gate that DHS and ICE have also padlocked, which delays and hinders prompt emergency response from the Broadview Police Department ("BPD") and Broadview Fire Department ("BFD"). *See* **Ex. 3** (the Affidavit of BFD Acting Chief Matthew J. Martin is attached as **Exhibit 3**).

10.     The Village has repeatedly advised DHS and ICE officials (i) that the fence is improperly occupying Village property, (ii) that DHS and ICE failed to comply with generally applicable local ordinances in constructing the fence, and (iii) that that fence's presence poses a real danger to public health and safety. The Village has repeatedly requested that DHS and ICE remove the fence, but they refuse to do so. *See* **Exs. 1-4** (Broadview Mayor Katrina R. Thompson's letter to Director Hott dated Sept. 26, 2025, is attached as **Exhibit 4**).

11.     Moreover, DHS and ICE's reportedly poor treatment of those processed at the BPF has, predictably, sparked protests.

12.     Yet, despite these entirely foreseeable lawful protests, ICE nonetheless erected this fence across Beach Street and its sidewalks approximately 100 feet north of the BPF building. The location of this fence creates a natural focal point at which individuals have gathered to lawfully protest, further creating a barrier to quick and immediate emergency response.

13.     In response to these entirely foreseeable and lawful protests, ICE needlessly deployed tear gas, pepper spray, mace, and rubber bullets at individuals and reporters located on the north side of the fence, injuring Village residents, BPD officers, and BFD officers and damaging Village property in the process. *See* **Ex. 4**.

14.     Still, despite all of the needless violence and destruction, and despite the Village's repeated pleas for the fence's removal, DHS and ICE officials expressly confirmed in a letter dated September 26, 2025, that they would not remove the fence. *See* **Ex. 5** (Director Lyons' letter to Broadview Mayor Katrina R. Thompson dated September 26, 2025, is attached as **Exhibit 5**).

15.     On October 3, 2025, the Village's Mayor, Katrina R. Thompson, sought to meet with Secretary Noem at the BPF to discuss the danger created by the fence and to again ask for its removal. Secretary Noem, however, was apparently unable to meet with Mayor Thompson.

16.     As such, it is clear that DHS, ICE, and their officials has developed, confirmed, and executed a policy, pattern, or practice of illegally trespassing on the Village's property in defiance of the Village's generally applicable ordinances and in hinderance of the Village's ability to enforce these ordinances so as to provide for the general health, safety, and welfare of its residents and the public at large, including DHS and ICE personnel and detainees present at the BPF.

17.     Accordingly, the Village brings this suit to end DHS and ICE's illegal occupation of its property and to abate the very real danger to public health and safety posed by the continued

presence of the fence. This Court can and should enjoin DHS, ICE, and all other federal defendants from continuing to illegally occupy Village property in violation of both state and federal law.

## PARTIES

18.     Plaintiff VILLAGE OF BROADVIEW (the "Village") is an Illinois Municipal Corporation located in Cook County, Illinois.

19.     Defendant U.S DEPARTMENT OF HOMELAND SECURITY ("DHS") is a federal agency of the United States. DHS is tasked with, in part, overseeing the enforcement of federal immigration law. U.S. Immigration and Customs Enforcement ("ICE") is an agency of the United States and a department within DHS. ICE is primarily responsible for carrying out the execution and enforcement of federal immigration law throughout the United States.

20.     Defendant KRISTI NOEM ("Secretary Noem") was and is at all times relevant the Secretary of DHS. Secretary Noem is sued in her official capacity.

21.     Defendant TODD LYONS ("Director Lyons") was and is at all times relevant the Acting Director of ICE. He is sued in his official capacity.

22.     Defendant Russell Hott ("Director Hott") was and is at all times relevant the Chicago Field Office Director for ICE. He is sued in his official capacity.

23.     On information and belief, DHS, ICE, and their officers and agents, including Secretary Noem, Director Lyons, and Director Hott (all together as the "Federal Defendants") ordered, participated in, or approved the construction of the metal fence on and along Beach Street as well as the continuing illegal occupation of the Village's property as a result of same.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1346 because this case involves federal questions and federal defendants.

25.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) because the events and actions giving rise to this suit occurred in the Village of Broadview, Cook County, Illinois.

26.     The federal government has waived sovereign immunity from suit for these claims for non-monetary relief pursuant to 5 U.S.C. § 702.

## FACTUAL BACKGROUND

27.     Recently, federal officials indicated that Chicago and its surrounding communities would receive a surge in DHS and ICE immigration enforcement activities in the form of an operation dubbed "Operation Midway Blitz."

28.     Since the beginning of "Operation Midway Blitz" in September of 2025, DHS and ICE officials claim to have made more than 800 arrests, despite some of those taken into custody being U.S. citizens or non-citizens with lawful status.

29.     The surge in arrests has lead to a surge in detainees being processed at the ICE processing facility located at 1930 Beach Street in Broadview, Illinois (the "BPF").

30.     While the BPF itself is federally owned, Beach Street and its adjacent sidewalks are Village owned and under the Village's exclusive control and jurisdiction. *See* **Ex. 1**.

31.     Beach Street is a two-lane public road, with one lane for traffic running north and the other for traffic running south. The sidewalks similarly run in a north/south direction on the east and west sides of Beach Street. The BPF is located on the west side of Beach Street. Past the BPF, there are several private businesses operating out of buildings located further south along on Beach Street before Beach street eventually leads into a "no-outlet" parking lot owned by the Westmont Engineering Corporation at or around 2000 Beach Street, Broadview, Illinois.

32.     On September 23, 2025, DHS and ICE, without obtaining a permit and without giving the Village any warning of any kind, illegally constructed and built an over eight-foot-high

metal fence on, over, and across Beach Street – a public street constituting real property owned solely by the Village. *See* **Ex. 1-4**.

33.     Under the Village's Municipal Code (the "Village Code"), however, it is unlawful to engage in any such construction without first having obtained a permit from the Village's Building Department. *See* Village Code § 8-2-1(A).

34.     The Village Code, moreover, makes it unlawful for any person or entity to "cause or to do injury to any sidewalk, street, or alley in the Village," to negligently or intentionally "destroy or deface any sidewalk . . . or other property of the Village," to "obstruct in any manner any street, alley or sidewalk," or to "erect or maintain any building or structure which encroaches on any public street or property." *See* Village Code §§ 8-2-9(A)(2)-(3), 8-2-9(B)(1), and 8-2-9(C).

35.     In so doing, without any authority or justification whatsoever, DHS and ICE have effectively damaged and taken municipal property that belongs to the Village in violation of the Village's Code, Illinois and Federal law, and the Fifth Amendment of the U.S. Constitution.

36.     This metal fence, moreover, runs east to west across the entirety of Beach Street, fully encroaching upon and blocking access to any part of Beach Street and its sidewalks as well as any commercial property that happens to be located on the south of this fence. *See* **Exs. 1-2**.

37.     The existence of this fence further prevents the BFD from mobilizing and maneuvering the required number of fire truck apparatus necessary to address a fire at any of the industrial buildings located on the south side of this fence, which by necessity is at least three ladder trucks, making it a dangerous safety issue for the public. In addition, there are train tracks on the opposite side of Beach Street, making Beach Street the only avenue through which emergency response vehicles can reach the properties located on the south side of the fence. *See* **Exs. 1-3**.

38.     Vehicles are now parked on Beech Street adjacent to the BPF on the south side of the fence. Prior to the erection of this fence, these vehicles were not parked there nor could they be parked there as they are parked in the roadway.

39.     Pursuant to Section 503.4 of the International Life Safety Code Fire Apparatus, public roads may not be obstructed in any manner, including by way of parked vehicles.

40.     There is also one fire hydrant within the perimeter of this fence. Should a fire occur on the south side of the fence, and should that single fire hydrant be non-operational, the fence's usurpation of the entirety of the street prevents the BFD from being able to run a fire hose from any other fire hydrant in the area. *See* **Ex. 3**.

41.     The Illinois Municipal Code expressly provides the Village with the right to seek injunctive relief to provide for the health and safety of its residents. *See* 65 ILCS 5/11-13-15.

42.     In addition, the Village Code makes it unlawful for any person or entity to maintain the existence of a nuisance, which the Village Code defines as "any act which endangers the public health or results in annoyance and discomfort harmful to the public health" as well as acts permitting "any building, structure or place to be or remain in a condition in any way dangerous to the public health." *See* Village Code §§ 3-1-10 and 4-3-1(A) & (D).

43.     The Village Code likewise make it "unlawful for any person to cause, permit, maintain, or allow the creation or maintenance of a nuisance," which it defines as "engaging in an unlawful act, omitting to perform a duty required under local law, state or federal law, or . . . permitting any condition or thing to be or exist, where the act, omission, condition, or thing either:

   a.  Injures or endangers the comfort, peace, health or safety of others;
   ***
   d.  Unlawfully interferes with, obstructs or tends to obstruct or renders dangerous for passage any public or private street, highway, sidewalk, stream, ditch, or drainage;
   e.  In any way interferes with other persons use of property; or

      f.   Essentially interferes with the comfortable enjoyment of life and property.

*See* Village Code §§ 4-3B-1(A)-(F) and 4-3B-2.

44.    The Village Code similarly defines an "emergency nuisance" as "maintaining, using, placing, leaving, or permitting to be or remain on any public private property" any "building, structure, or other place or location where any activity which is in violation of local, state or federal law is conducted, performed or maintained." *See* Village Code § 4-3B-3(I).

45.    The Village Code specifically authorizes the Village to abate any and all nuisances found to exist within the Village. *See* Village Code §§ 4-3-2 and 4-3B-7; *see also* §6-1-1, *et. seq.* (authorizing Village's Chief of Police to exercise control over the BPD, including, but not limited to, executing orders relating to the preservation of public health in the Village and enforcing observance of all applicable sections of the Village Code).

46.    Due to the full and complete barrier created by this metal fence, neither the Broadview Police Department ("BPD") nor the Broadview Fire Department ("BFD") can access any of the public or private property located south of this fence, making it impossible for the Village to respond to any emergency occurring at any location south of this fence. *See* **Exs. 1-4**.

47.    As such, DHS and ICE's construction of this fence on Beach Street constitutes an "emergency nuisance" that the Village is obligated to abate. *See* Village Code § 4-3B-1 – 9.

48.    For these reasons, on September 23, 2025, Matthew J. Martin, the Acting Fire Chief of the BFD ("Fire Chief Martin"), sent a letter to Defendant Russel Hott, ICE's Chicago Field Office Director ("Director Hott"), imploring ICE to immediately remove the fence due to the obvious dangers created by its existence. *See* **Ex. 1**; *see also* Village Code §5-1-1, *et. seq.* (Village's Fire Chief exercises control over the BFD and its fire apparatus).

49.    Fire Chief Martin's plea, however, was met with silence; DHS and ICE's continuing refusal to remove the fence, even after receiving notice of the danger it poses, constitutes an unlawful deprivation of property without due process of law, a continuing trespass, and a public nuisance.

50.    Moreover, the BPF itself is allegedly a "processing center," meaning that it is only intended to serve as a location for the initial intake of individuals detained by ICE before they are either released, deported, or transferred to a detention center. It is specifically not designed to be used as a detention facility, and DHS' own website does not list it as such.[6]

51.    The BPF, as a processing center, has a maximum capacity of 236 persons. According to DHS, persons processed at the BPF can for a maximum of 72 hours. The BPF does not provide any medical staff. *See* **Ex. 6** (A letter from members of Illinois' Congressional Delegation to Director Hott, dated Sept, 26, 2025, is attached as **Exhibit 6**).

52.    Thus, in the event of a medical emergency, BPD and BFD would need unobstructed access to the BPF in order to render medical or life-preserving assistance.

53.    Yet, ICE appears to be treating the BPF as if it were a detention center. Numerous outlets have reported that those held by ICE in the BPF are routinely held for more than 72 hours, during which they are given little-to-no food, have no beds, no working shower, no medical staff, no soap or toothpaste, and no private means to speak with an attorney.[7]

54.    Unsurprisingly, the horrific nature of these conditions has spurred individuals in the Chicagoland area to engage in lawful protests.

---

[6] U.S. Immigration and Customs Enforcement, *Detention Facilities*, (Oct. 2, 2025), https://www.ice.gov/detention-facilities.

[7] Lauren FitzPatrick and Adriana Cardona-Maguigad, *ICE's Broadview Facility has become a de facto detention center, minus the rules and oversight*, (Oct. 1, 2025), https://www.wbez.org/immigration/2025/10/01/broadview-immigration-processing-center-detention-ice-dhs.

55.     Despite these entirely foreseeable lawful protests, ICE decided to erect this metal fence across Beach Street and its sidewalks approximately 100 feet north of the BPF building. Consequently, the fence's location creates a natural focal point at which individuals gather to lawfully protest. Put simply, but for the existence of this fence, individual protesters (and reporters covering the protests) could not gather by it.

56.     As is well documented, in response to these entirely foreseeable and lawful protests, ICE has continuously and needlessly deployed tear gas, pepper spray, mace, and rubber bullets at individuals and reporters located on the north side of the fence. *See* **Exs. 4 & 6**.

57.     As a result, BPD officers and BFD emergency personnel have been called to monitor the scene, attempt to keep the peace, and render medical assistance to those injured by DHS and ICE. *See* **Ex. 4**.

58.     In so doing, the Village has been and will continue to be forced to pay significant overtime and other expenses to the BPD and BFD employees that have been deployed to this location to safeguard the rights of individuals protesting DHS and ICE's actions.

59.     On September 26, 2025, the Village's Mayor, Katrina Thompson ("Mayor Thompson"), sent a letter to Director Hott specifically demanding that ICE stop harming both the residents engaging in lawful protests and the BPD officers and BFD emergency service personnel on scene to provide aid. *See* **Ex. 4**; *see also* Village Code §1-5-4 (Village has a President who functions as Village's Chief Executive Officer).

60.     In her letter, Mayor Thompson specifically advised Director Hott that BPD and BFD personnel were "routinely being exposed" to and injured by ICE's unnecessary use of tear gas, pepper spray, and mace on protesters located on the north side of the fence. *See* **Ex. 4**.

61.     Mayor Thompson also reiterated that the fence was "illegally constructed" across Beach Street, was illegally preventing BPD and BFD personnel from accessing the area in case of an emergency, and that ICE's continued refusal to take down the fence thus created a serious risk to the health and safety of the Village and its residents. *See* **Ex. 4**.

62.     In response, Defendant Todd Lyons, Acting Director of ICE ("Director Lyons"), completely dismissed Mayor Thompson's concerns, claiming, falsely, that the BPF was "under siege" from rioters and that the Village's "failure to help" ICE conduct its immigration enforcement activities made the Village "a party to the obstruction of justice." *See* **Ex. 5**.

63.     Defendant Lyons confirmed that there would "be no change in [ICE's] operational posture until these unlawful activities cease[d]," and he further insinuated that the Village might receive more favorable treatment if Mayor Thompson would just "choose" to be a "part of the solution by . . . working with [ICE] to remove violent offenders." *See* **Ex. 5**.

64.     Despite DHS and ICE's clearly illegal occupation of the Village-owned streets and sidewalks, and despite the obvious danger created by the fence's total blockage of access to any property located behind it, and despite the Village's repeated requests for the fence to be removed, DHS and ICE continue to refuse to remove the fence.

65.     As such, as reflected in Defendant Lyons' letter, it is clear that DHS and ICE have developed, confirmed, and executed a policy, pattern, or practice of illegally trespassing on the Village's property in defiance of the Village's generally applicable health and safety ordinances and in hindrance of the Village's ability to enforce these ordinances so as to provide the general health, safety, and welfare of its residents.

66.     The Federal Defendants' policy, pattern, and practice of illegally constructing and maintaining the metal fence on and across Beach Street and its sidewalks, and their continuing

refusal to remove the fence, is a "final agency action" within the meaning of the Administrative Procedures Act (the "APA"), 5 U.S.C. § 701, *et seq.*

67.　　The Federal Defendants' construction of this fence is an action that from which "rights or obligations have been determined" and from which "legal consequences" will flow because they have physically taken, commandeered, and are otherwise illegally occupying Village property, without due process of law, and the Village no longer can access or use its own property and has no means to reclaim same.

68.　　The Federal Defendants' actions harmed and continue to harm the Village's constitutional interests and rights to exercise dominion and control over its own property, enforce its own ordinances, and provide for the general health, safety, and welfare of its residents.

69.　　The Village has a clear and ascertainable right in need of protection, in that the Village has the authority to ensure the public health, safety and welfare of its residents, to ensure compliance with its own ordinances, and to exercise dominion and control over its own property.

70.　　Irreparable harm will be suffered if injunctive relief is not granted in that the Village will continue to be dispossessed of its own property without due process of law.

71.　　Irreparable harm will be suffered if injunctive relief is not granted in that the Village will continue to be unable to enforce its own ordinances in accordance with its duty to provide for protect the general health, safety, and welfare of its residents.

72.　　Irreparable harm will be suffered if injunctive relief is not granted in that the Village, through the CPD and BFD, will be unable to access and therefore be unable to respond to any emergencies occurring on public or private property located anywhere on the south side of the fence, including any medical emergencies that may occur at the BPF.

73.　　Irreparable harm will be suffered if injunctive relief is not granted in that the Village will continue to have to pay its police officers and emergency first responders for the significant

and unplanned overtime expenses incurred as a result of the entirely foreseeable chaos occurring at the location of fence illegally erected and maintained by DHS and ICE.

## COUNT I

### Illinois Common Law Action for a Continuing Trespass & Injunctive Relief

74.     The Village incorporates by reference each preceding paragraph in this Complaint as though fully restated herein.

75.     Illinois law furnishes a cause of action for trespass based upon a defendant's wrongful invasion or interference with a plaintiff's interest in the exclusive possession of its land. *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 554 (1980); *City of Evanston v. Northern Illinois Gas Company*, 229 F. Supp. 3d 714, 727 (N.D. Ill. 2017).

76.     The Village may bring a claim seeking injunctive relief for the Federal Defendants' continuing trespass pursuant to the waiver of sovereign immunity granted under section 702 of the Administrative Procedures Act (the "APA"). 5 USC § 702.

77.     Beach Street and its adjacent sidewalks, upon which the Federal Defendants' have illegally constructed and have illegally maintained this fence, are municipal property that belong the Village and are under the Village's sole jurisdiction and control.

78.     The Village has a clear duty and interest and maintaining control over its public property and in ensuring that its streets and sidewalks remain free from unlawful obstructions that pose a danger to public health and safety.

79.     The Federal Defendants' fence is illegally occupying the Village's property.

80.     The Federal Defendants, through their construction of and refusal to dismantle this fence, have intentionally and repeatedly taken, commandeered, and otherwise exercised control and dominion over the Village's property.

81.     The Federal Defendants have confirmed that they will not remove this fence, despite having been advised of its illegality and its danger to public health and safety.

82.     The Federal Defendants' policy, pattern, and practice of illegally constructing and maintaining this metal fence on and across Beach Street and its adjoining sidewalks has caused actual damage to the Village in that the Village has been dispossessed of its lawful right to access and exercise dominion and control over Beach Street and its sidewalks.

83.     The Federal Defendants' intentional and ongoing trespass on Village property may properly be remedied by a preliminary and permanent injunction.

**COUNT II**

**Common Law Action for Abatement of a Public Nuisance & Injunctive Relief**

84.     The Village incorporates by reference each preceding paragraph in this Complaint as though fully restated herein.

85.     Both Illinois and Federal law permit a cause of action to abate a "public nuisance," which is defined as a "substantial and unreasonable interference with a right common to the general public, usually affecting the public health, safety, [and] peace." *Michigan v. U.S. Army Corps of Engineers*, 667 F. 3d 765, 771-774 (7th Cir. 2011); *City of Evanston v. Northern Illinois Gas Company*, 229 F. Supp. 3d 714, 727 (N.D. Ill. 2017).

86.     The Village may bring this claim seeking injunctive relief for the Federal Defendants' continuing public nuisance pursuant to the waiver of sovereign immunity granted under section 702 of the APA. 5 USC § 702.

87.     In addition, the Illinois Municipal Code expressly provides the Village with the right to seek injunctive relief to abate public nuisances that violate its ordinances and/or that endanger public health and safety. *See* 65 ILCS 5/11-13-15; *Village of Riverdale v. Allied Waste Transp., Inc.*, 334 Ill. App. 3d 224, 227-235 (1st Dist. 2002).

88.     The Federal Defendants' illegal construction and maintenance of this fence on Beach Street and its sidewalks – all of which is Village property – substantially and unreasonably interferes with the Village's right to exercise control and dominion over its own property.

89.     The Federal Defendants' illegal construction and maintenance of this fence substantially and unreasonably interferes with the Village's right to enforce its own ordinances and provide for the general health, safety, and welfare of its residents.

90.     The Federal Defendants' illegal construction and maintenance of this fence substantially and unreasonably interferes with the Village's ability to provide emergency medical services, fire protection services, or to otherwise respond to an ongoing emergency occurring on Beach Street at any location south of the fence.

91.     The Federal Defendants' illegal construction and maintenance of this fence substantially and unreasonably interferes with public health, safety, and peace because the Federal Defendants' deployment of tear gas, mace, pepper spray, and rubber bullets at protesters, who are foreseeably concentrated at the location of this fence, is causing injury and damage individuals present as well as BPD and BFD personnel attempting to monitor and keep the peace.

92.     The Federal Defendants' illegal construction and maintenance of this fence, and their continued refusal to remove the fence, thus constitutes a continuing emergency public nuisance that is inimical to the public's health and welfare and may be remedied by a preliminary and permanent injunction.

## COUNT III

**Violation of and Request for Injunctive Relief Under the Administrative Procedures Act 5 U.S.C. 706(2)(C): Acts in Excess of Statutory Jurisdiction**

93.     The Village incorporates by reference each preceding paragraph in this Complaint as though fully restated herein.

94.     The APA provides that federal courts shall "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A).

95.     The Village may bring this claim seeking injunctive for the Federal Defendants' violation of section 706(2)(C) of the APA pursuant to the waiver of sovereign immunity granted under section 702 of the APA. 5 USC § 702.

96.     Federal agencies have no power to act unless and until Congress expressly confers power upon them to do so. *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

97.     The Federal Defendants enforce federal immigration laws pursuant to the statutory authority conferred by the Immigration and Nationality Act (the "INA"). 8 U.S.C. § 1101, *et seq*. Secretary Noem is charged with the administration and enforcement of the INA and she exercises control and supervision over all DHS employees. 8 U.S.C. § 1103(1).

98.     Under the INA, the Federal Defendants have the power to interrogate, arrest, detain, and remove individuals charged with being in the country illegally. 8 U.S.C. § 1357.

99.     However, no section of the INA grants any of the Federal Defendants the authority to indefinitely take, commandeer, and otherwise physically occupy municipal property in connection with the operation of an ICE processing facility without due process of law.

100.    The INA permits the Attorney General to, at most, expend the "amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities . . . necessary for detention" and otherwise "commence condemnation proceedings" if unable to agree upon a purchase price. *See* 8 U.S.C. § 1231(g)(1)-(2); *see also* § 1103(b)(1)-(4).

101.     No federal agency or official, however, has ever sought to acquire legal title to Beach Street and its adjacent sidewalks at the location of this fence, whether through purchase or via institution of a condemnation proceeding.

102.     As such, in illegally constructing this fence on Village property without notice, without permission, and in violation of various Village ordinances, and in continuing to refuse to dismantle this fence, the Federal Defendants have acted without statutory authority under the INA.

103.     The Federal Defendants, moreover, are not just acting without statutory authority, but are in fact violating their own statutory authority, policies, and procedures.

104.     Section 1358 of the INA dictates that the "officers in charge of the various immigrant stations shall admit therein the proper State and local officers charged with the enforcement of the laws . . . in which any such immigrant station is located in order that such State and local officers may preserve the peace and make arrests" and that "the jurisdiction of such State and local officers . . . shall extend over such immigrant stations." 8 USC § 1358.

105.     The BPF, moreover, does not employ any medical staff, and it is therefore expected that the Village's emergency service personnel would be called upon to render assistance during a medical emergency. *See* 8 USC § 1370 ("the Attorney General shall fully reimburse States and political subdivisions of States for costs incurred by such a State or subdivision for emergency ambulance services provided to any alien who . . . is under the custody of the State or subdivision pursuant to a transfer, request, or other action by a Federal authority").

106.     As such, the Federal Defendants' illegal construction and maintenance of this fence, and their continuing refusal to remove the fence, violates the requirements of § 1358 because it restricts the Village's officers and first responders from accessing any public or private property on Beach street located south of this fence, including the BPF, in the event of an emergency.

107.    In addition, the Village's Municipal Code, which adopts the International Fire Code of 2018, contains numerous provisions mandating that all properties be constructed and operated such that fire apparatus have full access ability and remain unobstructed from reaching the property. *See* Village Code § 5-2-1, *et. seq*.

108.    The fence constructed by the Federal Defendants, however, blocks and obstructs all fire apparatus and emergency service vehicles from being able to access all property on the south side of this fence, which violates multiple fire safety provisions outlined in the Village's Code. See Village Code § 5-2-1, *et. seq*.

109.    Accordingly, the Federal Defendants' policy, pattern, and practice of illegally constructing and maintaining the metal fence on and across Beach Street and its sidewalks, and their continuing refusal to remove the fence, is without legal authority and exceeds their statutory jurisdiction or authorization.

110.    The Federal Defendants' policy, pattern, and practice of illegally constructing and maintaining the metal fence on and across Beach Street and its sidewalks, and their continuing refusal to remove the fence, is a "final agency action" within the meaning of the APA.

111.    The Federal Defendants' illegal construction and maintenance of this fence, and their continued refusal to dismantle the fence, is an action from which "rights or obligations have been determined" and from which "legal consequences" will flow because the Federal Defendants have physically taken, commandeered, and are otherwise illegally occupying Village property and the Village no longer can access or use its own property.

112.    The Federal Defendants' actions taken in excess of and in violation of their statutory authority have harmed and continue to harm the Village's interests and rights to exercise

dominion and control over its own property, enforce its own ordinances, and provide for the general health, safety, and welfare of its residents.

**COUNT IV**

**Violation of and Request for Injunctive Relief Under the Administrative Procedures Act 5 U.S.C. 706(2)(B): Acts Contrary to Constitutional Rights and Powers**

113.    The Village incorporates by reference each preceding paragraph in this Complaint as though fully restated herein.

114.    The APA provides that federal courts shall "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

115.    The Village may bring this claim seeking injunctive for the Federal Defendants' violation of section 706(2)(B) of the APA pursuant to the waiver of sovereign immunity granted under section 702 of the APA. 5 USC § 702.

116.    The U.S. Constitution's Fifth Amendment states that no person shall be "deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation." U.S. Const. Amend. V.

117.    In illegally constructing the fence on and across Beach Street and its adjacent sidewalks without permission and without notice, and via their continued refusal to remove it, the Federal Defendants have deprived the Village of its property without due process of law.

118.    In addition, in illegally constructing the fence on and across Beach Street and its adjacent sidewalks without permission and without notice, and via their continued refusal to remove it, the Federal Defendants have "taken" the Village's private property "for public use, without just compensation."

119. The Federal Defendants' policy, pattern, and practice of illegally constructing and maintaining the metal fence on and across Beach Street and its sidewalks, and their continuing refusal to remove the fence, is a "final agency action" within the meaning of the APA.

120. The Federal Defendants' construction and maintenance of this fence is an action from which "rights or obligations have been determined" and from which "legal consequences" will flow because the Federal Defendants have physically taken, commandeered, and are otherwise illegally occupying Village property without due process of law, and the Village no longer can access or use its own property and has no means to reclaim same.

121. The Federal Defendants' illegal construction and maintenance of this fence, constitutes an inverse condemnation of municipal property and an unconstitutional taking and deprivation of property without due process in violation of the U.S. Constitution's Fifth Amendment. It is therefore agency action that is "contrary to constitutional right, power, privilege, or immunity" as specified in 5 U.S.C § 2(B).

122. The Federal Defendants' actions have harmed and continue to harm the Village's constitutional interests and rights to exercise dominion and control over its own property, enforce its own ordinances, and provide for the general health, safety, and welfare of its residents.

**COUNT V**

**Violation of and Request for Injunctive Relief Under the Administrative Procedures Act 5 U.S.C. 706(2)(D): Failure to Observe Required Procedures**

123. The Village incorporates by reference each preceding paragraph in this Complaint as though fully restated herein.

124. The APA provides that federal courts shall "hold unlawful and set aside agency action" that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(B).

125.    The Village may bring this claim seeking injunctive for the Federal Defendants' violation of section 706(2)(D) of the APA pursuant to the waiver of sovereign immunity granted under section 702 of the APA. 5 USC § 702.

126.    The Federal Defendants' policy, pattern, and practice of illegally constructing and maintaining the fence on and across Beach Street and its sidewalks, and their continuing refusal to remove the fence, is a final agency action that constitutes a substantive rule.

127.    The Federal Defendants' decision to implement that substantive rule without submitting it to notice and comment did not observe the procedure required by law.

128.    The Federal Defendants' actions have harmed and continue to harm the Village's constitutional interests and rights to exercise dominion and control over its own property, enforce its own ordinances, and provide for the general health, safety, and welfare of its residents.

## COUNT VI

## Violation of and Request for Injunctive Relief Under the Administrative Procedures Act 5 U.S.C. 706(2)(A): Arbitrary and Capricious

129.    The Village incorporates by reference each preceding paragraph in this Complaint as though fully restated herein.

130.    The APA provides that federal courts shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

131.    The Village may bring this claim seeking injunctive for the Federal Defendants' violation of section 706(2)(A) of the APA pursuant to the waiver of sovereign immunity granted under section 702 of the APA. 5 USC § 702.

132.    The Federal Defendants' erection of this fence and their continuing refusal to remove the fence constitutes a "final agency action" within the meaning of the APA.

133.    The Federal Defendants' illegal construction of this fence and their continuing refusal to remove this fence is an action from which "rights or obligations have been determined" and from which "legal consequences" will flow because the Village no longer has the ability to access or use its own property.

134.    The Federal Defendants' erection of this fence, without permission, without notice, without explanation or justification, and in violation of several Village Ordinances, and their continued refusal to remove the fence, as detailed herein, was and is arbitrary, capricious, and an abuse of discretion in violation of section 706(2)(A) of the APA.

135.    The Federal Defendants' arbitrary and capricious actions have harmed and continue to harm the Village's interests and rights to exercise dominion and control over its own property, enforce its own ordinances, and provide for the general health, safety, and welfare of its residents.

## COUNT VII

### *Ultra Vires* Act

136.    The Village incorporates by reference each preceding paragraph in this Complaint as though fully restated herein.

137.    In the alternative, if the Federal Defendants' construction and maintenance of this fence on Village-owned property was not a final agency action, then their construction of it, and their continuing refusal to dismantle it, was and is an *ultra vires* action.

138.    As the owner of Beach Street and its adjacent sidewalks, the Federal Defendants' *ultra vires* actions have irreparably harmed and continue to harm Village's interests and rights to exercise dominion and control over its own property, enforce its own ordinances, and provide for the general health, safety, and welfare of its residents.

139.    The Village and its injuries fall within the zone of interest sought to be protected by the APA.

140.    The Village seeks non-monetary injunctive and declaratory relief.

141.    Therefore, the APA waives the Federal Defendants' sovereign immunity for this *Ultra Vires* claim.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, VILLAGE OF BROADVIEW, respectfully requests that this Court enter judgement against the Federal Defendants including:

A.  Issuance of a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction mandating that the Federal Defendants dismantle and remove the metal fence occupying Beach Street and its adjacent sidewalks at or near the location of the Broadview Processing Facility;

B.  Issuance of a judgement and order declaring that the Federal Defendants' construction of this fence, and the Federal Defendants' continuing refusal to remove the fence, constitutes an unlawful agency action in violation of Sections 702(2)(A)-(D) of the Administrative Procedures Act;

C.  Issuance of a judgment and order declaring that the Federal Defendants' construction of this fence, and the Federal Defendants' continuing refusal to remove the fence, constitutes a continuing trespass and a public nuisance under Illinois and Federal law, as applicable; and

D.  Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

**VILLAGE OF BROADVIEW**

By:    */s/ Michael Albert*
Michael A. Albert
*One of the Village's Attorneys*

Michael T. Del Galdo (#6255825)
Michael A. Albert (#6320206)
Veronica Bonilla-Lopez (#6281050)
Charles S. Huff (#6271245)
**DEL GALDO LAW GROUP, LLC**
1441 S. Harlem Ave, Berwyn, IL 60402
(t) 708-222-7000 │ (f) 708-222-7001
delgaldo@dlglawgroup.com
albert@dlglawgroup.com
vblopez@dlglawgroup.com
huff@dlglawgroup.com
*Attorneys for the Village of Broadview*

## VERIFICATION

     Under penalties as provided by law, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

 

 

_____

MATTHEW J. MARTIN, M.S., CFO