IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| The VILLAGE OF BROADVIEW, an Illinois Municipal Corporation, ) ) ) ) Plaintiff, ) ) v. ) ) ) The U.S. DEPARTMENT OF HOMELAND ) SECURITY; KRISTI NOEM, in her official ) capacity as Secretary of the U.S. Department of ) Homeland Security; TODD LYONS, in his official ) capacity as Acting Director for U.S. Immigration ) and Customs Enforcement; and RUSSELL HOTT, ) in his official capacity as the Chicago Field Office ) Director for U.S. Immigration and Customs ) Enforcement, ) Defendants. ) | Case No. 1:25-cv-12164 |

**THE VILLAGE OF BROADVIEW'S VERIFIED EMERGENCY MOTION
FOR A TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION**

NOW COMES the Plaintiff, VILLAGE OF BROADVIEW, by and through its attorneys Michael T. Del Galdo, Michael A. Albert, Veronica Bonilla-Lopez, and Charles S. Huff of Del Galdo Law Group, LLC, and, for its Emergency Motion for a Temporary Restraining Order and Preliminary Injunction against Defendants U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"), KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security ("Secretary Noem"), TODD LYONS, in his official capacity as Acting Director for U.S. Immigration and Customs Enforcement ("Director Lyons"), and RUSSELL HOTT, in his official capacity as Director of the Chicago Field Office for U.S. Immigration and Customs Enforcement ("Director Hott") (all together as the "Federal Defendants"), hereby states:

**INTRODUCTION**

The Village of Broadview (the "Village") has filed this emergency action against the Federal Defendants because DHS and its subsidiary agency, U.S. Immigration and Customs

Enforcement ("ICE"), have brazenly constructed an over eight-foot-tall metal fence in the middle of a Village-controlled street and its adjacent sidewalks. This fence, which the Federal Defendants illegally put up in the middle of the night without notice, physically deprives the Village of its right to exercise control and dominion over its own land. The fence also constitutes an immediate public safety hazard, in violation of multiple generally applicable municipal ordinances, as it prevents the Village's emergency service personnel and vehicles from reaching any of the, commercial and industrial properties located on the other side of the fence. As has been well-documented by national news outlets, the construction of this fence in the middle of a public street outside of an ICE Processing Facility has also created a natural point of concentration for individuals to gather in protest of the Federal Defendants' immigration enforcement actions. As a result, the Village has had to divert and expend substantial resources by sending officers and emergency service personnel to this location in effort to keep the peace and provide assistance to those injured by the Federal Defendants' needless assault on lawful protest activity.

The Village has repeatedly demanded that the Federal Defendants remove this fence and that they end the mayhem they are causing in the community. The Federal Defendants responded to the Village's pleas not with understanding or a desire to help, but with a threat that the situation would only get worse if the Village did not submit to their continuing violation of its constitutional, statutory, and common law rights to exercise control over its own property. The weekend will undoubtedly bring additional mayhem. Therefore, the emergency matter requirement of Local Rule 77.2 is satisfied due to the Federal Defendants continued illegal occupation of Village property which must end. Accordingly, the Village therefore requests on an emergency basis that this Honorable Court immediately enter a temporary restraining order ("TRO") and/or preliminary injunction requiring the Federal Defendants to remove the fence off of the Village's property.

## ARGUMENT

Rule 65 of the Federal Code of Civil Procedure grants this Court authority to enter a TRO or preliminary injunction with or without notice to the Federal Defendants. Fed. R. Civ. P. 65(a)-(b). Entry of a TRO and/or preliminary injunction is necessary to protect the Village's right to exercise control and dominion over its own property, enforce its own ordinances, and protect the health, safety, and welfare of its residents. The Village requests entry of a TRO and/or preliminary injunction in order to prevent the undoubted irreparable harm that will occur if the Federal Defendants are allowed to continue illegally occupying municipal property. The standard for issuance of a TRO is the same as is required for a preliminary injunction. *Meritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014). In order to obtain a TRO, the Village must demonstrate (1) that this case has a likelihood of success on the merits, (2) that no adequate remedy at law exists; (3) that it will suffer irreparable harm which, absent injunctive relief, outweighs any harm to the Federal Defendants, and (4) that an injunction will not harm the public interest. *Michigan v. U.S. Army Corps of Engineers*, 667 F. 3d 765, 769 (7th Cir. 2011).

In its Complaint, the Village alleged entitlement to injunctive relief based on claims for (I) a continuing trespass in violation of Illinois law, (II) abatement of public nuisance in violation of Illinois and Federal law, (III) a violation section 706(2)(C) of the Administrative Procedure Act (the "APA"), (IV) a violation of section 706(2)(2)(B) of the APA, (V) a violation of section 706(2)(D) of the APA, (VI) a violation of section 706(2)(A) of the APA, and (VII) an alternative claim for an *ultra vires* action. Under Illinois law, a plaintiff's continuing physical trespass upon another's land is grounds for an immediate injunction. Similarly, in a public nuisance claim, equitable relief is warranted where the defendant is carrying on an activity that is causing an injury or significant threat of injury to some cognizable interest of the plaintiff. In addition, the Administrative Procedure Act (the "APA") empowers a reviewing court, "to the extent necessary

to prevent irreparable injury," to "issue all necessary and appropriate process to . . . preserve status or rights pending conclusion of the review proceedings." 5 USC § 705. In sum, actions that dispossess a plaintiff of its property, invade constitutional rights and interests, or are otherwise likely to result in real and immediate harm are proper grounds for entry of an injunction.

    *A. The Village has a Substantial Likelihood of Success on the Merits*

To demonstrate a likelihood of success on the merits, the moving party need only show that it has a "greater then negligible chance of winning." *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F. 3d 796, 804 (7th Cir. 2002). "The threshold for this showing is low." *Cooper v. Salazar*, 196 F. 3d 809, 813 (7th Cir. 1999).

Under Illinois law, a trespass occurs when a defendant wrongfully invades or interferes with a plaintiff's interest in the exclusive possession or control of its land. *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 554 (1980); *City of Evanston v. Northern Illinois Gas Company*, 229 F. Supp. 3d 714, 727 (N.D. Ill. 2017). Here, it cannot seriously be disputed that the Federal Defendants – in illegally constructing and maintaining this fence in the middle of a Village-owned street and sidewalk – have physically intruded upon the Village's right to exercise control over its own property. *See* Complaint, ¶¶ 77-86; *see also* **Exs. 1-4**.[1] Such conduct unquestionably qualifies as a trespass under Illinois law. *See Chicago Title & Trust Co. v. Weiss*, 238 Ill. App. 3d 921, 928-929 (2d Dist. 1992) (defendant's placement of basketball hoop on plaintiff's property held a trespass); *City of Evanston*, 229 F. Supp. 3d at 727 (defendant's conduct in causing contaminants to continually enter into plaintiff's property stated claim for trespass under Illinois law).

---

[1] A letter dated Sept. 23, 2025, sent by the Acting Chief of the Broadview Fire Department ("BFD"), Matthew J. Martin ("Fire Chief Martin"), to Director Hott, is attached as **Exhibit 1**; Photographs of the fence taken by BFD Fire Chief Martin on Sept. 23, 2025, are attached as **Exhibit 2**; the Affidavit of BFD Fire Chief Martin is attached as **Exhibit 3**; a letter dated Sept. 26, 2025, sent by Broadview Mayor Katrina R. Thompson ("Mayor Thompson") to Director Hott, is attached as **Exhibit 4**.

The Federal Defendants, moreover, have continuously refused the Village's repeated requests to take down the fence and to stop their illegal occupation of Village property. *See* Complaint, ¶¶ 10-14; *see also* **Ex. 5**.[2] This confirmation of their intention to continue their unlawful trespass on the Village's property may properly be restrained by the issuance of a TRO and/or preliminary injunction. *See Benno v. Central Lake County Joint Action Water Agency*, 242 Ill. App. 3d 306, 314 (2d Dist. 1993) (holding that "plaintiff's request for a permanent injunction [was] properly supported by allegations that he suffered continuing trespasses").

The same actions likewise qualify as a public nuisance. Under both Illinois and Federal law, a public nuisance is defined as a "substantial and unreasonable interference with a right common to the general public, usually affecting the public health, safety, [and] peace." *Michigan v. U.S. Army Corps of Engineers*, 667 F. 3d 765, 771-774 (7th Cir. 2011); *City of Evanston*, 229 F. Supp. 3d at 727. The Federal Defendants' illegal construction and maintenance of this fence substantially and unreasonably interferes with rights common to the general public, including the public right to be able to access and use the Village's streets and sidewalks as well as the Village's right to exercise control and dominion over its own property. *See Michigan v. U.S. Army Corps of Engineers*, 758 F.3d 892, 904 (7th Cir. 2014) (noting that allegations of the manner in which defendant's conduct substantially and unreasonably interferes with public rights is what is needed to allege claim for public nuisance under Federal law); *Willmschen v. Trinity Lakes Improvement Ass'n*, 362 Ill. App. 3d 546, 553-554 (2d Dist. 2005) (holding that public nuisances also constitute private nuisances "[w]hen the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land").

---

[2] A letter dated Sept. 26, 2025, sent by Director Lyons to the Village, is attached as **Exhibit 5**.

In addition, the Federal Defendants' illegal construction of this fence, and their continued refusal to remove it, makes it impossible for the Village's emergency service personnel to respond to fires or other medical emergencies because the fence blocks all individual and vehicular access to all property located on the other side of this fence. *See* **Exs. 1-4**. This creates a dangerous and ongoing threat to public health and safety that violates the Village's Municipal Code and is clearly a public nuisance that may be remedied by issuance of a TRO and/or preliminary injunction by this Court. *See City of Evanston*, 229 F. Supp. 3d at 727 (allegations that defendant's waste oils might contaminate the local water supply was sufficient to state claim for public nuisance under Illinois law); *see also City of Quincy v. Weinberg*, 363 Ill. App. 3d 654, (4th Dist. 2006) (noting that complaint set forth sufficient cause of action to abate a hazardous public nuisance for the purpose of, in part, "allow[ing] reasonable access to emergency personnel" so as to "lessen the risks to public health and safety").

The Village likewise has a substantial likelihood of success on its claims for a violation of the APA. Section 706(2)(A) of the APA states that federal courts shall "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A). Federal agencies and their employees, such as the Federal Defendants here, have no power to act unless and until they are expressly authorized to do so by Congress. *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

Here the Federal Defendants are authorized to enforce federal immigration laws pursuant to the Immigration and Nationality Act (the "INA"). *See* 8 U.S.C. § 1103, 1357. Nothing in the INA, however, grants the Federal Defendants the authority to either illegally construct a fence on municipal property in defiance of generally applicable local ordinances and/or illegal occupy Village property in violation multiple municipal ordinances designed to safeguard the health,

safety, and welfare of Village residents. *See* 8 U.S.C. § 1103, 1357. If anything, the INA indicates that "officers in charge of the various immigrant stations" should remain subject to "the jurisdiction of such State and local officers" in connection with local efforts to "preserve the peace" and provide "emergency ambulance services." 8 U.S.C. §§ 1358, 1370. Since the Federal Defendants are acting without (and perhaps contrary to) statutory authority, their conduct may properly be enjoined under section 706(2)(A) of the APA. *See Louisiana v. Biden*, 622 F. Supp. 3d 267, 294 (W.D. LA, 2022) (finding that executive order that required the U.S. Department of Interior to pause oil and gas leases on public lands effectively ordered the Department to take action beyond and in violation of its statutory authority).

Section 706(2)(b) of the APA, in turn, provides that federal courts shall "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). The U.S. Constitution's Fifth Amendment states that no person shall be "deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation." U.S. Const. Amend. V. The Federal Defendants' illegal construction of this fence, and their continuing to refusal to remove it, violates the Village's Fifth Amendment Rights to (i) not be deprived of its property without due process of law and (ii) not have its property "taken for public purpose without just compensation."

The Village has an obvious property interest in being able to exercise control and dominion over its own property. And the Federal Defendants did not seek a permit to construct this fence on Village property nor did they even give notice of their intent to do so. *See* Complaint, ¶ 7. The INA is clear that to the extent any private property even can be taken, it must be done so through a lawful condemnation or eminent domain proceeding. *See* 8 U.S.C. § 1231(g)(1)-(2); *see also* § 1103(b)(1)-(4). No such process occurred here. *See* Complaint ¶¶ 104-105, 116-125.

Next, section 706(2)(b) of the APA provides that federal courts shall "hold unlawful and set aside agency action" that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(B). Obviously, the Federal Defendants' actions here, which are substantive in nature, were not performed in accordance with any of the agency rule making procedures required by law. *See* 5 U.S.C. § 533; *see also Louisiana*, 622 F. Supp. 3d 296 (holding that "actions of the Government Defendants violate[d] the APA's notice and comment procedure" where it was "uncontested that no notice and comment was conducted by [the] Government Defendant agencies pursuant to 5 U.S.C. § 553").

Finally, section 706(2)(A) of the APA provides that federal courts shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). For all of the reasons described above, e.g., lack of notice, lack of permit, lack of explanation, continued refusal to remove the fence despite the dangers created, the Federal Defendants have nonetheless refused to remove the fence. *See* Complaint, ¶¶ 132-138; **Exs. 1-5**. Such conduct is clear evidence of arbitrary and capricious action or is otherwise *ultra vires* conduct. *See Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1 (2020) (rescission of DACA program held arbitrary and capricious); *California v. United States Dept. of Transportation*, 2025 WL 1711531, at *2-4 (D. RI, 2025) (Department of Transportation secretary's orders to impose immigration related requirements on federal transportation funding were not based on any possible statutory authority and was thus *ultra vires* as well as violation of the APA).

> B. The Village Has No Adequate Remedy at Law and Will Suffer Irreparable Harm If the Federal Defendants Are Not Ordered to Remove the Fence

Here, the Federal Defendants have illegally taken, commandeered, and are physically occupying the Village's property, preventing the Village from exercising control over its own

property and from being able to enforce its own generally applicable ordinances so as to protect the health, safety, and welfare of the public. *See* **Exs. 1-4**. Other than immediate entry of a TRO and/or preliminary injunction, there is simply no other remedy at law that could abate these harms. *See Texas v. United States Department of Homeland Security*, 123 F. 4th 186, 212 (5th Cir. 2024) ("[w]hen a trespass is continuous such that stopping it would require a multiplicity of suits, an injunction is justified because monetary relief is inadequate"); *Village of Riverdale v. Allied Waste Transp., Inc.*, 334 Ill. App. 3d 224, 324-235 (1st Dist. 2002) (holding that village lacked adequate remedy at law where village alleged that "an extreme risk to the public health and safety, as well as to the property and the environment, exist[ed] if defendants' operations continue[d]").

The Federal Defendants' continuing illegal occupation of the Village's property is by itself an irreparable harm for which an injunction is proper. *See Texas*, 123 F. 4th at 212 ("where a tort claim seeks to stop a 'continuing trespass to land,' as Texas's does, irreparable injury exists, and injunctive relief is appropriate"). Director Lyon's implicit threat that the Federal Defendants might stop invading the Village's rights only if the Village "choose[s]" to "work with [the Federal Defendants] to remove violent offenders" only further underscores the irreparable harm that Village will suffer if the Federal Defendants are not ordered to remove this fence. *See California*, 2025 WL 1711531, at *4 (holding that plaintiff States demonstrated that they would face continuing irreparable harm "if forced to agree to Defendants' unlawful and unconstitutional immigration conditions" because plaintiffs "face[d] losing billions of dollars in federal funding" and were "being put in a position of relinquishing their sovereign right to decide how to use their own police officers" and were thus "at risk of losing the trust built between local law enforcement and immigrant communities").

### C. The Balance of Equities and the Public Interest Weigh in the Village's Favor

In the balancing of harms, a court considers the harm to the moving party if an injunction is not entered against the harm to the non-moving party if the injunction is granted. *Cooper*, 196 F. 3d at 817. Where the likelihood of succeeding on the merits is strong, it favors the moving party on the balance of harm analysis. *Wheaton College v. Burwell*, 50 F. Supp. 3d 939, 946 (N.D. Ill. 2014). As discussed above, the Village has a strong likelihood of success on its claims for a continuing trespass, public nuisance, and violations of the APA. The Federal Defendants, on the other hand, will suffer no harm as they have no right to unlawfully occupy Village property and will simply return to the same condition that they were in on September 22, 2025.

Nor does the public interest favor the Federal Defendants in this case because there is "no public interest in the perpetuation of unlawful agency action." *Texas*, 123 F. 4th at 213. Rather, "[t]he opposite is true: there is substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id*. Protecting the Village's right to exercise dominion and control over its own property, moreover, is clearly in the public interest because "the public interest supports clear protections for property rights from government intrusion and control." *Id.* As the Fifth Circuit aptly put it, "[t]hat interest is protected by ensuring that the actions taken by federal agents to enforce immigration law do not unnecessarily intrude into the rights of countless property owners." *Id*.

### CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Plaintiff, VILLAGE OF BROADVIEW, respectfully requests that this Court enter a Temporary Restraining Order and Preliminary Injunction against the Federal Defendants, requiring the Federal Defendants to the remove the fence that is the subject of this suit, and further providing the Village with any and all other relief as equitable and just.

                                                                          Respectfully submitted,

                                                                          **VILLAGE OF BROADVIEW**

                                          By:     */s/ Michael Albert*
                                                                Michael A. Albert
                                                                *One of the Village's Attorneys*

Michael T. Del Galdo (#6255825)
Michael A. Albert (#6320206)
Veronica Bonilla-Lopez (#6281050)
Charles S. Huff (#6271245)
**DEL GALDO LAW GROUP, LLC**
1441 S. Harlem Ave, Berwyn, IL 60402
(t) 708-222-7000 │ (f) 708-222-7001
delgaldo@dlglawgroup.com
albert@dlglawgroup.com
vblopez@dlglawgroup.com
huff@dlglawgroup.com
*Attorneys for the Village of Broadview*